**FITAPELLI & SCHAFFER, LLP**
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **RUBEN MENDEZ, on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | |
| **-against-** | **No: 25 Civ. 1646** |
| **GROVEHOUSE HOSPITALITY, LLC, GROVEHOUSE HOSPITALITY HOLDINGS, LLC, WOODFIRE COLLISION LLC, MISI DOMINO LLC, MELISSA ROBBINS, individually, and SEAN FEENEY, individually,** | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| **Defendants.** | |

Ruben Mendez ("Plaintiff"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to himself, and upon information and belief as to other matters, alleges as follows:

**NATURE OF THE ACTION**

1.      This lawsuit seeks to recover minimum wages, overtime compensation, unlawful deductions, tip misappropriation, and other damages for Plaintiff and his similarly situated co-workers – servers, runners, bussers, bartenders, barbacks (collectively, "Tipped Workers") who work or have worked at Misi at 329 Kent Avenue, Brooklyn, New York 11249 ("Misi") and Lilia at 567 Union Avenue, Brooklyn, New York 11211 ("Lilia") (together "Defendants" or the "Restaurants'").

2.      Misi is owned and operated by Misi Domino LLC, Grovehouse Hospitality, LLC, Grovehouse Hospitality Holdings, LLC, Melissa Robbins ("Robbins") and Sean Feeney ("Feeney").

3.      Lilia owned and operated by and operated by Woodfire Collision LLC, Grovehouse Hospitality, LLC, Grovehouse Hospitality Holdings, LLC, Robbins, and Feeney.

4.      During the relevant time period, Robbins and Feeney owned and operated the Restaurants together.

5.      The Restaurants offer authentic Italian cuisine and have received critical acclaim in the New York City restaurant scene since their respective openings in 2018 and 2018.[1]

6.      Defendants have been part of a single integrated enterprise that jointly employs Plaintiff and similarly situated Tipped Workers.

7.      At all times relevant, Plaintiff and other Tipped Workers worked between Defendants' Restaurants at the direction and control of Defendants' common management and ownership. For example, Plaintiff Mendez regularly worked at both Restaurants on a continuous basis and also when one restaurant is short staffed. Plaintiff and other Tipped Workers are shared between locations without the need to apply for employment or undergo new training.

8.      Defendants have failed to properly compensate Tipped Workers who work or have worked for them throughout the relevant time period.

9.      At all times relevant, Defendants paid Plaintiff and other Tipped Workers at or below the "tipped" minimum wage rate for tipped employees.

10.     Defendants have not satisfied the strict requirements under the Fair Labor Standards Act ("FLSA") and/or the New York Labor Law ("NYLL") by which they could take a tip credit towards the hourly rates paid to Tipped Workers.

11.     In this regard, Defendants failed to provide Plaintiff and other Tipped Workers at

---

[1]  *See* 2023 New York Times' Top 100 Restaurants of New York City, (available at https://www.nytimes.com/2023/12/13/dining/nyc-best-new-restaurants.html) (last visited Mar. 25, 2025); 2024 New York Times' Top 100 Restaurants of New York City (available at https://www.nytimes.com/interactive/2024/dining/best-nyc-restaurants.html) (last visited Mar. 25, 2025).

both Restaurants with notification of the tipped minimum wage rate or tip credit provisions of the FLSA and/or NYLL.

12.    Defendants also required Plaintiff and other Tipped Workers at Lilia to engage in a tip distribution scheme wherein they must share tips with employees working as expeditors.

13.    Expeditors are not entitled to share tips under the FLSA and the NYLL.

14.    In this regard, individuals employed as expeditors at Lilia work in the back-of-the-house and are responsible for finalizing plates at the expeditor station, calling out tickets, and hand the finished plates to food runners or other waitstaff who actually run food to the tables. Lilia's expeditors do not regularly engage in customer service. As a result, these expeditors are not entitled to share tips under the FLSA and the NYLL.

15.    Defendants also required Plaintiff and other Tipped Workers, at both Restaurants, to spend a substantial amount of time, 2 hours or more than 20% of their worktime, performing non-tip producing side work duties that were related to their tipped occupation, and require Plaintiff and other Tipped Workers to perform non-tipped producing side work unrelated to their tipped occupation.

16.    Defendants required Plaintiff and Tipped Workers to perform side work at the start, during, and at the end of each shift, usually before or after service when the Restaurants are closed to the public.

17.    The duties that Defendants require Plaintiff and Tipped Workers to perform are duties that are customarily assigned to employees in other restaurants that typically receive at least the full minimum wage rate.

18.    The side work that Defendants require of Plaintiff and Tipped Workers is not specific to particular customers, tables, or sections, but is performed in mass quantities for the

3

entire shift or for future shifts.

19.    Defendants required Plaintiff and Tipped Workers to spend this time performing non-tip producing side work, including, but not limited to: 1) traveling to the restaurant's storage unit, about a block away, to retrieve supplies and linens, 2) cleaning the expeditor station, 3) refilling service stations, 4) refilling and organizing cabinets, 5) polishing glassware, 6) cleaning lamps, 7) emptying garbage cans throughout the restaurant, 7) folding napkins, 8) restocking plateware, 9) organizing napkins, aprons, and other supplies in the backroom, and 10) sweeping and mopping the kitchen floor among other tasks.

20.    As some of these duties are not related to Plaintiff's duties as Tipped Workers, Plaintiff and similarly situated Tipped Workers are engaged in dual occupations for which they are entitled to the full minimum wage.

21.    Upon information and belief, Defendants also maintained a policy and practice whereby they applied automatic gratuities on large parties and failed to factor in these gratuities into Plaintiff's and Tipped Workers' regular rates for overtime purposes.

22.    Defendants also maintained a policy and practice of unlawfully misappropriated gratuities from Plaintiff and Tipped Workers.

23.    In this regard, Defendants distributed gratuities to non-tip eligible expeditors at Lilia in violation under both the FLSA and NYLL.

24.    Upon information and belief, Defendants also maintained a policy and practice whereby they applied "service charges" on large party events.

25.    Under New York law, such charges are purported to be gratuities unless the venue clarifies on all printed materials referring to the charge that the charge is not a gratuity.

26.    Upon information and belief, Defendants did not represent in all printed materials

4

that the service charge was not a gratuity.

27.     Under New York law, charges that are purported to be gratuities must be distributed to service staff in their entirety.

28.     Upon information and belief, Defendants did not distribute any of the service charges to Plaintiff and similarly situated Tipped Workers.

29.     Defendants also failed to provide Plaintiff and all other similarly situated Tipped Workers with proper time of hire notices pursuant to NYLL § 195(1), as Plaintiff's wage notice forms failed to show them their correct regular rate of pay, their proper overtime rate, and the correct tip credit allowance rate.

30.     Plaintiff relied on his wage notices to ensure that Defendants paid them the correct rate for the hours they worked.

31.     Due to Defendants' failure to provide the correct regular rates of pay and correct tip credit allowance rates on the wage notices provided to Plaintiff and similarly situated Tipped Workers, Plaintiff and Tipped Workers were misinformed about the correct wages they earned, and thus they were deprived of the information necessary for reviewing their wages, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

32.     Defendants' incorrect wage notices allowed Defendants to continue their unlawful wage and hour scheme without Plaintiff's and Tipped Workers' awareness that they were being underpaid.

33.     Defendants similarly failed to provide Plaintiff and all other similarly situated Tipped Workers with accurate statements of wages pursuant to NYLL § 195(3), as Plaintiff's wage statements failed to show them their correct regular rate of pay, their proper overtime rate, and the correct tip credit allowance rate.

34.    Plaintiff relied on his paystubs to ensure that Defendants paid them the correct rate for the hours they worked.

35.    Due to Defendants' failure to provide the correct regular rates of pay and correct tip credit allowance rates on the wage statements provided to Plaintiff and similarly situated Tipped Workers, Plaintiff and Tipped Workers were misinformed about the correct wages they earned, and thus they were deprived of the information necessary for reviewing their wages, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

36.    Defendants' incorrect wage statements allowed Defendants to continue their unlawful wage and hour scheme without Plaintiff's and Tipped Workers' awareness that they were being underpaid.

37.    Had Plaintiff and Tipped Workers been able to see that they were not being lawfully paid via their wage notices and wage statements, they would have been able to avoid underpayment of their wages. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) (plaintiff establishes concrete harm if plaintiff can show she "would have avoided some actual harm or obtained some actual benefit if accurate [statements] had been provided"); *see also Van Duser v. Tozzer Ltd.*, No. 23 Civ. 9329 (AS), 2024 WL 4635495, at *5 (S.D.N.Y. Oct. 31, 2024).

38.    Plaintiff's inability to crosscheck his wage notices and wage statements constitutes concrete harm.

39.    Accordingly, Plaintiff and Tipped Workers are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide accurate wage statements, up to a total of five thousand dollars each pursuant to NYLL § 195(1).

40.    Furthermore, Plaintiff and Tipped Workers are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide accurate wage statements,

up to a total of five thousand dollars each pursuant to NYLL § 195(3).

41.     Plaintiff now bring this action on behalf of themselves and similarly situated current and former Tipped Workers who elect to opt in to this action pursuant to the FLSA, specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and other similarly situated Tipped Workers of their lawfully earned wages.

42.     Plaintiff bring this action on behalf of themselves and similarly situated current and former Tipped Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the NYLL, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

## THE PARTIES

### Plaintiff

#### Ruben Mendez

43.     Ruben Mendez ("Mendez" or "Plaintiff") is an adult who is a resident of Bronx, New York.

44.     Plaintiff worked for Defendants at Misi from approximately September 2019 through July 2022, subject to the COVID-19 restaurant closures in 2020, and at Lilia from approximately July 2020 to September 2020, then again from December 2020 through approximately 2021.

45.     Plaintiff is a covered employee within the meaning of the FLSA and the NYLL.

46.     A written consent form for Plaintiff is being filed with this Class and Collective Action Complaint.

**Defendants**

47.    Defendants jointly employed Plaintiff and similarly situated Tipped Workers at all times relevant.

48.    Defendants have substantial control over Plaintiff's and Tipped Workers' working conditions, and over the unlawful policies and practices alleged herein.

49.    Defendants are part of a single integrated enterprise that has jointly employed Plaintiff and similarly situated employees at all times relevant.

50.    During all relevant times, Defendants' operations are interrelated and unified.

51.    During all relevant times, the Restaurants shared common management, and were centrally controlled and/or owned by Defendants.

52.    During all relevant times, Defendants allowed and instructed Plaintiff and Tipped Workers to transfer or be shared by and between different restaurant locations controlled and/or owned by Defendants.

53.    During all relevant times, Defendants have applied the same employment policies, practices, and procedures to Plaintiff and all Tipped Workers.

54.    During all relevant times, Defendants have controlled the labor relations of the Restaurants.

55.    During all relevant times, Defendants have been Plaintiff's employers within the meaning of the FLSA and NYLL.

**Grovehouse Hospitality, LLC**

56.    Grovehouse Hospitality, LLC is a domestic business corporation organized and existing under the laws of New York. It lists its Service of Process address as The LLC, 329 Kent Avenue, Ground Floor, Brooklyn, New York 11249.

8

57.    Grovehouse Hospitality, LLC has done business as Grovehouse Hospitality throughout the relevant time period.

58.    Grovehouse Hospitality, LLC was and is a covered employer within the meaning of the FLSA and the NYLL.

59.    Grovehouse Hospitality, LLC has maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices that applied to them.

60.    Grovehouse Hospitality, LLC applies the same employment policies, practices, and procedures to all Tipped Workers at the Restaurants, including policies, practices, and procedures with respect to payment of wages.

61.    Upon information and belief, at all relevant times, Grovehouse Hospitality, LLC has had an annual gross volume of sales in excess of $500,000.

62.    At all times relevant, Defendants have employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**Grovehouse Hospitality Holdings, LLC**

63.    Grovehouse Hospitality Holdings, LLC is a domestic business corporation organized and existing under the laws of New York. It lists its Service of Process address as The LLC, 329 Kent Avenue, Ground Floor, Brooklyn, New York 11249.

64.    Grovehouse Hospitality Holdings, LLC has done business as Grovehouse Hospitality throughout the relevant time period.

65.    Grovehouse Hospitality Holdings, LLC was and is a covered employer within the meaning of the FLSA and the NYLL.

66.    Grovehouse Hospitality Holdings, LLC has maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices that

applied to them.

67.     Grovehouse Hospitality Holdings, LLC applies the same employment policies, practices, and procedures to all Tipped Workers at the Restaurants, including policies, practices, and procedures with respect to payment of wages.

68.     Upon information and belief, at all relevant times, Grovehouse Hospitality Holdings, LLC has had an annual gross volume of sales in excess of $500,000.

69.     At all times relevant, Defendants have employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**Misi**

70.     Misi Domino LLC is a domestic business corporation organized and existing under the laws of New York. It lists its DOS Process address as The LLC, 329 Kent Avenue, Ground Floor, Brooklyn, New York 11249.

71.     Misi Domino LLC has done business as Misi throughout the relevant time period.

72.     Misipasta is listed as the trade name (DBA) for Misi Domino LLC under the New York State Liquor Authority.

73.     Misi Domino LLC was and is a covered employer within the meaning of the FLSA and the NYLL.

74.     Misi Domino LLC has maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices that applied to them.  Specifically, Misi Domino LLC is listed as the corporate payor on Plaintiff's pay stubs from Misi.

75.     Misi Domino LLC applies the same employment policies, practices, and procedures to all Tipped Workers at Misi, including policies, practices, and procedures with respect to payment of wages.

76.     Upon information and belief, at all relevant times, Misi Domino LLC has had an annual gross volume of sales in excess of $500,000.

77.     At all times relevant, Defendants have employed more than 2 employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**Lilia**

78.     Woodfire Collision LLC is a domestic business corporation organized and existing under the laws of New York. It lists its Service of Process as C/O United States Corporation Agents, Inc., 7014 13th Avenue, Suite 202, Brooklyn, New York 11228.

79.     Woodfire Collision LLC has done business as Lilia throughout the relevant time period.

80.     Lilia Restaurant is listed as the trade name (DBA) for Woodfire Collision LLC under the New York State Liquor Authority.

81.     Woodfire Collision LLC was and is a covered employer within the meaning of the FLSA and the NYLL.

82.     Woodfire Collision LLC has maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices that applied to them.

83.     Woodfire Collision LLC applies the same employment policies, practices, and procedures to all Tipped Workers at Lilia, including policies, practices, and procedures with respect to payment of wages.

84.     Upon information and belief, at all relevant times, Woodfire Collision LLC has had an annual gross volume of sales in excess of $500,000.

85.     At all times relevant, Defendants have employed more than 2 employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**Melissa Robbins**

86.     Upon information and belief, Robbins is a resident of the State of New York.

87.     At all relevant times herein, Robbins has owned and operated the Restaurants.

88.     At all relevant times, Robbins has maintained a direct and significant management role at the Restaurants.

89.     At all relevant times, Robbins has been actively involved in managing the day-to-day operations of the Restaurants.

90.     Robbins makes determinations regarding the hiring and firing of employees.

91.     At all relevant times, Robbins has had the power to stop any illegal pay practices that harmed Plaintiff and Tipped Workers at the Restaurants.

92.     At all relevant times, Robbins has had the power to transfer the assets and/or liabilities of the Restaurants.

93.     At all relevant times, Robbins has had the power the declare bankruptcy on behalf of the Restaurants.

94.     At all relevant times, Robbins has had the power to enter into contracts on behalf of the Restaurants.

95.     At all relevant times, Robbins has had the power to close, shut down, and/or sell the Restaurants.

96.     Robbins is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, he has employed and/or jointly employed Plaintiff.

**Sean Feeney**

97.     Upon information and belief, Feeney is a resident of the State of New York.

98.     At all relevant times herein, Feeney has owned and operated the Restaurants.

99.     At all relevant times, Feeney has maintained a direct and significant management role at the Restaurants.

100.    At all relevant times, Feeney has been actively involved in managing the day-to-day operations of the Restaurants.

101.    Feeney makes determinations regarding the hiring and firing of employees.

102.    At all relevant times, Feeney has had the power to stop any illegal pay practices that harmed Plaintiff and Tipped Workers at the Restaurants.

103.    At all relevant times, Feeney has had the power to transfer the assets and/or liabilities of the Restaurants.

104.    At all relevant times, Feeney has had the power the declare bankruptcy on behalf of the Restaurants.

105.    At all relevant times, Feeney has had the power to enter into contracts on behalf of the Restaurants.

106.    At all relevant times, Feeney has had the power to close, shut down, and/or sell the Restaurants.

107.    Feeney is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, he has employed and/or jointly employed Plaintiff.

## JURISDICTION AND VENUE

108.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

109.    This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

110.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §

1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

## **COLLECTIVE ACTION ALLEGATIONS**

111.    Plaintiff brings the First and Second Cause of Action, FLSA claims, on behalf of:

> All current and former Tipped Workers employed at the Restaurants in New York between May 20, 2019[2] and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective).

112.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the FLSA Collective for their minimum wages and overtime compensation owed.

113.    Consistent with Defendants' policies, patterns, or practices, Plaintiff and the FLSA Collective were not paid the proper minimum wage for all hours worked up to 40 per workweek and premium overtime compensation for all hours worked beyond 40 per workweek.

114.    Defendants also failed to furnish Plaintiff and the FLSA Collective with proper notice of the tip-credit.

115.    All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

116.    As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiff and the FLSA Collective, the minimum wages for all hours worked up to 40 per workweek and premium overtime wages for all

---

[2] The class period is due to a tolling agreement that was executed between Plaintiff and Defendants that tolled the FLSA and NYLL statute of limitations back to May 20, 2016. *See* **Exhibit A**. The tolling agreement became effective on January 9, 2024 and was cancelled on March 25, 2025.

hours worked in excess of 40 hours per workweek.

117.    A violation of the FLSA is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

118.    Defendants knew or should have known that their wage and hour practices relating to Tipped Workers violated the FLSA's prohibition against improper notice of the tip credit, improper tip sharing arrangements, and excessive side work. In this regard, district courts around the country, including district courts throughout New York, have dealt with hundreds of similar violations against comparable restaurants.

119.    Defendants failed to undertake any diligent review of their wage and hour practices relating to Tipped Workers and/or did not stay up to date with its review of wage and hour practices related to Tipped Workers.

120.    As a result, Defendants acted willful due to their reckless disregard of their conduct.

## CLASS ACTION ALLEGATIONS

121.    Plaintiff brings the Third, Fourth, Fifth, Sixth, and Seventh Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the class of persons consisting of:

> All current and former Tipped Workers at the Restaurants between May 20, 2016[3] and the date of the final judgment in this matter (the "NYLL Class").

122.    The NYLL Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

123.    There are more than fifty members of the NYLL Class.

---

[3] *Id.; see also* **Exhibit A**.

124.    Plaintiff's claims are typical of those claims that could be alleged by any NYLL Class member, and the relief sought is typical of the relief which would be sought by each NYLL Class member in separate actions.

125.    Plaintiff and the NYLL Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all NYLL Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the NYLL Class members.

126.    Plaintiff is able to fairly and adequately protect the interests of the NYLL Class members and has no interests antagonistic to the NYLL Class members.

127.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many Plaintiff and classes in wage and hour cases.

128.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

129.    Common questions of law and fact exist as to the NYLL Class that predominate over any questions only affecting Plaintiff and the NYLL Class members individually and include, but are not limited to, the following:

(a) Whether Defendants failed to furnish Plaintiff and the NYLL Class with proper notice of the tip-credit;

(b) Whether Defendants failed to pay Plaintiff and the NYLL Class minimum wages for all of the hours they worked;

(c) Whether Defendants required Plaintiff and the NYLL Class to spend more than 20% and/or 2 hours, whichever is less, of their time performing non-tipped side work duties;

(d) Whether Defendants correctly compensated Plaintiff and the NYLL Class for hours worked in excess of 40 per workweek.

(e) Whether Defendants distributed a portion of the tips to workers who are not entitled to receive tips;

(f) Whether Defendants failed to furnish Plaintiff and the NYLL Class with a proper time of hire wage notice, as required by the NYLL; and

(g) whether Defendants failed to furnish Plaintiff and the NYLL Class with accurate statements with every payment of wages, as required by the NYLL.

## PLAINTIFF's FACTUAL ALLEGATIONS

130.    Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Ruben Mendez**

131.    Throughout his employment, Mendez' schedule varied, but he has generally worked the following scheduled hours, unless she missed time for vacation, sick days, or holidays, or obtained additional shifts:

(a) At Misi:

i. 4 to 5 days per week, for on average between 25 to 30 hours per week

(b) At Lilia:

i. 4 to 5 days per, for on average between 27 to 32 hours per week.

(c) At times, if Mendez was scheduled extra hours or covered extra shifts, he

17

would work more than 40 hours per week. For example, in the workweek

of June 21, 2021 to June 27, 2021, Mendez worked 42.95 total hours.

132.    Throughout Plaintiff's employment, Defendants applied a tip credit towards the

minimum wage paid to him for work performed as a runner and busser, Tipped Worker positions.

133.    Defendants failed to properly notify Plaintiff in writing of the tip credit provisions

of the FLSA and NYLL.

134.    Defendants unlawfully required Plaintiff to share tips at Lilia with expeditors,

employees in positions that are not entitled to share tips under the FLSA and NYLL.

135.    Defendants also require Plaintiff to spend this time performing non-tip producing

side work for more than 20 percent of her worktime and/or two hours, including, but not limited

to:  1) traveling to the restaurant's storage unit, about a block away, to retrieve supplies and linens,

2) cleaning the expeditor station, 3) refilling service stations, 4) refilling and organizing cabinets,

5) polishing glassware, 6) cleaning lamps, 7) emptying garbage cans throughout the restaurant, 7)

folding napkins, 8) restocking plateware, 9) organizing napkins, aprons, and other supplies in the

backroom, and 10) sweeping and mopping the kitchen floor among other tasks.

136.    As a result of the above, Defendants do not satisfy the requirements under the FLSA

and NYLL by which they could apply a tip credit to the hourly rates paid to Plaintiff, and

Defendants have failed to compensate him at the proper minimum and overtime wage rate.

137.    At all times relevant, Plaintiff was entitled to receive the full statutory minimum

wage rate for the first 40 hours of work each workweek and time and one-half the full minimum

wage rate for all hours worked beyond 40 per workweek.

138.    Defendants failed to furnish Plaintiff with proper annual wage notices, as required

by the NYLL.

139.    Moreover, Defendants failed to furnish Plaintiff with accurate statements of wages with each payment of wages as required by the NYLL.

140.    Due to Defendants failure to provide the correct regular rate of pay and the correct tip credit rate on Plaintiff's wage notices and wage statements, Mendez was misinformed about his actual wages earned, and was thus deprived of the information necessary to review his wages earned, which was a direct cause for his economic injury, and in fact, resulted in his wages being underpaid.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

141.    Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

142.    At all times relevant, Plaintiff and the FLSA Collective were, are, or have been employees, and Defendants were, are, or have been employers of Plaintiff and the FLSA Collective, within the meaning of 29 U.S.C §§ 201 *et seq*.

143.    At all times relevant, Defendants have been employers of Plaintiff and the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq*.

144.    Defendants have not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq*., because Defendants failed to give proper § 203(m) notice, required Plaintiff and the FLSA collective to share tips with tip-ineligible positions, and required them to perform a substantial amount of non-tipped "side work" in excess of 20 percent of their work time. Defendants compensated Plaintiff and the FLSA Collective at the tipped minimum wage rate rather than at the full hourly minimum wage rate as required by 29

U.S.C. §§ 201 *et seq*. Additionally, Defendants failed to provide Plaintiff and the FLSA Collective with proper § 203(m) notice of the tip credit as required by the FLSA.

145.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

146.    Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

147.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

148.    Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times the full minimum wage rate – for all hours worked beyond 40 per workweek.

149.    Upon information and belief, Defendants also applied automatic gratuities on large parties and failed to factor in these gratuities into Plaintiff's and Tipped Workers' regular rates for overtime purposes.

150.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys'

fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

### THIRD CAUSE OF ACTION
**New York Labor Law – Minimum Wages**
**(Brought on behalf of Plaintiff and the NYLL Class)**

151.    Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

152.    At all times relevant, Plaintiff and the NYLL Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the NYLL Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

153.    Defendants have failed to pay Plaintiff and the NYLL Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

154.    Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiff and the members of the NYLL Class the full minimum wage at a rate of (a) $11.00 per hour on and after December 31, 2016; $13.00 per hour on and after December 31, 2017; $15.00 per hour on and after December 31, 2018; and $16.00 per hour on and after December 31, 2024.

155.    Defendants have failed to notify Plaintiff and the NYLL Class of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

156.    Defendants also required Plaintiff and the NYLL Class to spend a substantial amount of time, 2 hours or more than 20% of their work time, performing non-tip producing side work duties that were related to their tipped occupation, and required Plaintiff and the NYLL Class

21

to perform non-tip producing side work unrelated to their tipped occupation.

157.    Defendants also required Plaintiff and the NYLL Class to share a portion of their tips to tip-ineligible positions.

158.    As a result, Plaintiff and the NYLL Class have been entitled to the full minimum wage rate rather than the reduced tipped minimum wage rate during this time period.

159.    Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

### FOURTH CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### (Brought on behalf of Plaintiff and the NYLL Class)

160.    Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

161.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiff and the NYLL Class.

162.    Defendants failed to pay Plaintiff and the NYLL Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times the full minimum wage rate – for all hours worked beyond 40 per workweek.

163.    Upon information and belief, Defendants also applied automatic gratuities on large parties and failed to factor in these gratuities into Plaintiff's and Tipped Workers' regular rates for overtime purposes.

164.    Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are

entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Tip Misappropriation**
**(Brought on behalf of Plaintiff and the NYLL Class)**

165.    Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

166.    Defendants required Plaintiff and the NYLL Class to share portions of the gratuities and/or service charges they received with employees other than servers, bussers, runners, bartenders, or similar employees, in violation of NYLL, Article 6 § 196-d, and the supporting New York State Department of Labor Regulations.

167.    By Defendants' knowing or intentional demand for, acceptance of, and/or retention of a portion of the gratuities and/or service charges received by Plaintiff and the NYLL Class, Defendants have willfully violated the NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

168.    Due to Defendants' willful violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants their unpaid gratuities and/or service charges, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Proper Annual Wage Notices**
**(Brought on behalf of Plaintiff and the NYLL Class)**

169.    Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

170.    Defendants have failed to supply Plaintiff and the NYLL Class with a proper time of hire wage notice, as required by NYLL, Article 6, § 195(1), in English or in the language

identified as their primary language, at the time of hiring and at subsequent wage changes, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

171.    Defendants failed to provide the correct regular rates of pay and correct tip credit allowance rates on the wage notices provided to Plaintiff and similarly situated Tipped Workers.

172.    As a result, Plaintiff and Tipped Workers were misinformed about the correct wages they earned, and thus they were deprived of the information necessary for reviewing their wages, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

173.    Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff and the NYLL Class are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

### SEVENTH CAUSE OF ACTION
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the NYLL Class)**

174.    Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

175.    Defendants failed to supply Plaintiff and the NYLL Class with an accurate

statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

176.    Defendants failed to provide the correct regular rates of pay and correct tip credit allowance rates on the wage statements provided to Plaintiff and similarly situated Tipped Workers.

177.    As a result, Plaintiff and Tipped Workers were misinformed about the correct wages they earned, and thus they were deprived of the information necessary for reviewing and calculating their wages, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

178.    Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff and the NYLL Class are entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, individually, and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief:

A.    That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notices, to all Tipped Workers who are presently, or

have at any time between May 20, 2019 and up through and including the date of this Court's issuance of court-supervised notice, worked at the Restaurants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.      Unpaid minimum wages and overtime compensation and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiff Ruben Mendez as the representative of the NYLL Class and counsel of record as Class Counsel;

E.      Unpaid minimum wages, overtime compensation, tip misappropriation, and other unpaid wages, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.      Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiff and the NYLL Class with proper annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

G.      Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiff and the NYLL Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

H.      Prejudgment and post-judgment interest;

I.      Reasonable attorneys' fees and costs of the action; and

J.      Such other relief as this Court shall deem just and proper.

Dated:  March 25, 2025
        New York, New York

                        Respectfully submitted,


                        /s/ Brian S. Schaffer
                        Brian S. Schaffer

                        **FITAPELLI & SCHAFFER, LLP**
                        Brian S. Schaffer
                        Armando A. Ortiz
                        David J. Sack
                        28 Liberty Street, 30th Floor
                        New York, NY 10005
                        Telephone: (212) 300-0375

                        *Attorneys for Plaintiff and the Putative Class and*
                        *Collective*

## FORMULARIO DE CONSENTIMIENTO DE UNIÓN

1.    Doy mi consentimiento para ser parte demandante en una demanda contra GROVE HOUSE HOSPITALITY, LILIA, MISI y / o entidades e individuos relacionados con el fin de obtener reparación por violaciones de la Fair Labor Standards Act, (*Ley de las Normas Laborales Justas*) de conformidad con 29 USC § 216(b).

2.    Al firmar y devolver este formulario de consentimiento, yo designo Fitapelli & Schaffer, LLP ("La Firma") para representarme y hacer decisiones en mi defensa acerca del caso y cualquier acuerdo extrajudicial. Entiendo que costos razonables hechos en mi defensa serán deducido de cualquier acuerdo extrajudicial o juicio será prorrateado entre todos los otros demandantes. Entiendo que la firma peticionara con la Corte para conseguir los costos de abogado de cualquier acuerdo extrajudicial o juicio en la suma que será el mayor de lo siguiente: (1) la suma "lodestar", que es calculada por multiplicar una tarifa por hora razonable por los números de horas dedicado a la demanda, o (2) 1/3 del total bruto del acuerdo judicial o juicio. Estoy de acuerdo de ser vinculado a cualquier proceso legal de este asunto por la Corte, sea favorable o desfavorable.

_____
Ruben mendez Vega (Jul 22, 2022 13:33 EDT)
Firma (Signature)


# Ruben mendez Vega
_____
Nombre legal completo (Imprenta) (Full Legal Name (Print))